# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

JAMES J. ABOLTIN,
 *et al.*,

            Plaintiffs,

     vs.

JEUNESSE, LLC, *et al.*,

            Defendants.

CASE NO. 6:17-cv-01624-PGB-KRS

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement and attached exhibits (the "Settlement Agreement") dated as of August 17, 2018, is made by and among the following: on the one hand, Plaintiffs James J. Aboltin and Pamela J. Knight (collectively "Plaintiffs"), on behalf of themselves, and on behalf of each of the Settlement Class Members (as defined herein), by and through Plaintiffs' Counsel; and on the other, Defendants Jeunesse, LLC (a/k/a Jeunesse Global, Inc.), a Florida limited liability company (hereafter "Jeunesse"); Wendy R. Lewis; Ogale "Randy" Ray; Scott A. Lewis; Kim Hui; and Kevin Giguere, by and through their counsel, (collectively, the "Settling Defendants," and together with Mr. Aboltin and Ms. Knight, the "Settling Parties"). This Settlement Agreement is intended by the Settling Parties to resolve, discharge and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Settlement Agreement.

## 1.   DEFINITIONS

In addition to the foregoing defined terms, the following terms shall have the meanings as set forth below:

1.1    "Action" means the action originally filed in the United States District Court for the District of Arizona, and subsequently transferred to the United States District Court for the Middle District of Florida, entitled *Aboltin v. Jeunesse, LLC*, Case No. 6:17-cv-01624-PGB-KRS, including all pleadings on file in that action.

2

1.2    "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Claim Form to the Claims Administrator or is otherwise authorized to receive benefits under this Settlement Agreement.

1.3    "Claims Administrator" means Epiq Global.  The Claims Administrator shall be subject to and comply with this Settlement Agreement.

1.4    "Plaintiffs' Counsel" means the law firm of Jonathan Batchelor, PLC, and Dickinson Wright PLLC.

1.5    "Class Period" means the period beginning January 1, 2010, through and including the date the Preliminary Approval Order is entered.

1.6    "Court" means the United States District Court for the Middle District of Florida.

1.7    "Effective Date" means the first date after which all of the following events and conditions have been met or have occurred:

1.7.1  The Settlement Agreement is executed and delivered by/to all Parties and approved by the Court;

1.7.2  The Court enters the Final Judgment and Order Approving Settlement ("Final Judgment");

1.7.3  The Final Judgment becomes "Final." "Final" means the occurrence of any of the following: (a) the expiration of the time for an appeal or

petition for review of the Final Judgment; or (b) in the event an appeal or petition is filed, final affirmance of the Final Judgment following review, or final dismissal of any appeal or petition from the Final Judgment.  If the Final Judgment is set aside, materially modified, vacated or reversed by the Court or by an appellate court, and is not fully reinstated on further appeal, then the Final Judgment does not become "Final" and the Effective Date cannot occur.  The sole exceptions are if the Final Judgment is modified as to the amount of fees or costs payable to Plaintiffs' Counsel or a reduction in the incentive awards payable to Plaintiffs.  A change in those amounts shall not preclude the Final Judgment from becoming Final.  In the event the Final Judgment is modified in a manner that would preclude the Final Judgment from becoming Final, the Settling Party or Parties aggrieved by such modification— "aggrieved" meaning, for Plaintiffs, a reduction in benefits available to Settlement Class Members, and for Defendants, an increase in their monetary obligations or a material modification in the definition of Released Claims or the scope of the Settlement Class—shall have the option, at its or their sole discretion, to accept the modification and allow the Final Judgment as so modified to become Final.  If such a Settling Party wishes to exercise this option, that Settling Party shall file a written notice of waiver with the Court within ten (10) days after such Settling Party is notified by applicable court process of the modification.  The modified Final Judgment shall not become Final unless all aggrieved Settling Parties file such a

4

waiver.  If all aggrieved Settling Parties file waivers, then the Final Judgment shall become Final on the later of the date all such waivers are filed or all of the conditions of this Paragraph 1.7.3 are satisfied.

1.8    "Notice" means the notice provided for in Section 7 and substantially in the form attached hereto as Exhibit A.

1.9    "Distributor" means any natural person, corporation, limited liability company, partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, or any other business or legal entity that participated in any manner in the Jeunesse business opportunity (*i.e.*, by executing a contract with Jeunesse providing the opportunity to sell or resell Jeunesse products and/or to sponsor other persons to do so; paying for a "starter kit" of materials to facilitate this business opportunity; directly or indirectly holding a position in the Jeunesse genealogy of distributors, and/or purchasing Jeunesse products at the discounted prices available only to Jeunesse distributors); along with such persons' spouses, heirs, predecessors, successors, representatives, alter egos, or assigns.

1.10   "Preliminary Approval Order" means the order to be entered by the Court that preliminarily approves the Settlement Agreement, certifies the Settlement Class for settlement purposes only, approves the Notice of Proposed Settlement, approves the Summary Notice, and sets the Settlement Hearing, as provided for in Section 7.  A proposed Preliminary Approval Order is attached hereto as Exhibit C.

1.11 "Settlement Agreement" means this Stipulation of Settlement, including all attached exhibits.

1.12 "Settlement Class" means all persons who were Distributors and residents of the United States during any portion of the Class Period, and who do not validly and timely request exclusion from the Settlement Class as provided in Section 10. Excluded from the Settlement Class are the Defendants, Defendants' employees, and members of Defendants' immediate families.

1.13 "Fairness Hearing" means the hearing to determine whether this Settlement Agreement should be finally approved by the Court, as provided for in Section 7.

1.14 "Summary Notice" means the written notice provided for in Section 7 and substantially in the form attached hereto as Exhibit B.

1.15 The word "or" means and/or.

1.16 The plural includes the singular and vice-versa.

## 2. LITIGATION BACKGROUND

2.1 <u>Original Complaint</u>. On July 29, 2016, Plaintiff James J. Aboltin, on behalf of himself and a putative class of "others similarly situated," filed this Action in the United States District Court for the District of Arizona, naming as defendants Jeunesse, three executives of Jeunesse (Wendy Lewis, Randy Ray, and Scott Lewis),

6

and three Distributors (Kim Hui, Jason Caramanis, and Alex Morton).  Plaintiffs voluntarily dismissed Ms. Hui from the original complaint on March 7, 2017, and Mr. Morton contended that Plaintiffs never validly served him.  The original complaint sought a judgment declaring that Jeunesse could not enforce the form of arbitration agreement in effect when Mr. Aboltin contracted to become a Distributor in July 2016, and alleged the following claims for relief: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, (2) conspiracy to commit RICO violations; and (3) consumer fraud under Arizona Rev. Stat. § 44-1521 *et seq.*

2.2    <u>Motion to Transfer</u>. On October 3, 2016, Defendants Jeunesse, Wendy Lewis, Randy Ray, and Scott Lewis, timely moved the United States District Court for the District of Arizona (the "Arizona Court") to transfer the case to the United States District Court for the Middle District of Florida.  The Arizona Court took that motion under advisement and, by Order dated October 6, 2016, deferred the Defendants' obligation to respond substantively to the Complaint (*i.e.,* by answering or moving to dismiss) until 21 days after it ruled on the transfer motion.  The Arizona Court granted the transfer motion on September 12, 2017, and the matter was transferred to this Court.

2.3    <u>First Amended Complaint</u>. On October 30, 2017, Plaintiffs (now including Ms. Knight) filed a First Amended Complaint.  The First Amended

7

Complaint pleaded claims against Jeunesse, Wendy Lewis, Randy Ray, and Scott Lewis; repleaded claims against Kim Hui, Alex Morton, and Jason Caramanis; and added two corporations—MLM Mafia, Inc., and Online Communications, LLC—allegedly related to Mr. Caramanis, as well as another Distributor, Kevin Giguere. The First Amended Complaint sought the same unenforceability declaration with respect to the arbitration agreements executed by Mr. Aboltin and Ms. Knight; the same claims for RICO violations and conspiracy to commit RICO violations; state law consumer fraud under the laws of Arizona (Ariz. Rev. Stat. § 44-1521, *et seq.*), Florida (Fla. Stat. §§ 501.204(1), 559.801, and 849.091); and Texas (Tex. Bus. & Com. Code § 17.41); claims for "federal securities fraud";  and a claim for "unjust enrichment."

2.4     <u>Motion to Compel Arbitration</u>.   On December 1, 2017, Jeunesse, Wendy Lewis, Randy Ray, and Scott Lewis, timely moved to compel the arbitration of all of Plaintiffs' claims pursuant to the arbitration agreements executed by Mr. Aboltin and Ms. Knight.   Jeunesse contends that all Distributors are subject to agreements to arbitrate their disputes with and concerning Jeunesse individually, and not as members of a purported class.   Plaintiffs opposed that motion and contested the enforceability and validity of the arbitration agreements. As of the date of this Settlement Agreement, the Motion to Compel Arbitration remains *sub judice*.

2.5    Motion to Dismiss.  On December 1, 2017, Jeunesse, Wendy Lewis, Randy Ray, and Scott Lewis, timely moved to dismiss the First Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs opposed that motion on a number of different grounds and, as of the date of this Settlement Agreement, the Motion to Dismiss remains *sub judice*.

2.6    Motion to Deny Class Certification.  Also on December 1, 2017, Jeunesse, Wendy Lewis, Randy Ray, and Scott Lewis, moved the Court to deny class certification preemptively.  They contended that, on the face of Plaintiffs' complaint, Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23.  Plaintiffs opposed that motion, raising a number of different arguments. And as of the date of this Settlement Agreement, the Motion to Deny Class Certification remains *sub judice*.  Plaintiffs were due to file their affirmative Motion for Class Certification on July 2, 2018, but after reaching a tentative agreement on the material terms of a settlement, the Settling Parties moved the Court on June 29, 2018, to stay all pending deadlines for 30 days so that the Settling Parties could draft this Settlement Agreement.  The Court subsequently granted two extensions of that filing deadline, ultimately requiring the filing of this Settlement Agreement by August 17, 2018.

2.7    Motions by Defendants Hui and Giguere.  Although Plaintiffs agreed to defer the obligations of Defendants Hui and Giguere to respond substantively to

the First Amended Complaint until after the Court ruled on the other Defendants'
pending motions, the Court rejected the parties' joint stipulation to that effect.  On
April 17, 2018, Defendants Hui and Giguere moved to dismiss the First Amended
Complaint's claims against them in their entirety, joining the arguments made by
their fellow Defendants and also raising arguments specific to themselves.  Plaintiffs
opposed that motion on a number of different grounds, and, as of the date of this
Settlement Agreement, it remains *sub judice*.

## 3.    BENEFITS OF THE SETTLEMENT

3.1    <u>Benefits to Settlement Class</u>. As explained in detail below, Jeunesse,
on behalf of all Settling Defendants, will provide the following benefits to the
Settlement Class:  First, Jeunesse will pay the sum of Two Million Five Hundred
Thousand Dollars ($2.5 million) into a "common fund," from which the costs of
providing notice to Settlement Class Members and administering the Settlement, and
also the fees and costs awarded to Plaintiffs' Counsel, shall be deducted, and the
remainder of which shall be available for Settlement Class Members to claim
according to the terms of this Settlement Agreement.  Second, during the time period
set forth in the Preliminary Approval Order and the Notice and Summary Notice for
Settlement Class Members to file claims for benefits, Jeunesse shall waive the
requirements in Appendix B.4 and B.4.1 of its Policies and Procedures precluding a
Distributor from returning products beyond twelve (12) months from purchase or

the commercially reasonable shelf life period of which has passed, limited to Twenty-Five Hundred Dollars ($2,500) in products per distributor. Third, beginning no later than fifteen (15) business days after this Settlement Agreement becomes Final, Jeunesse shall adopt the practices set forth herein in Paragraphs 5.3-5.8.

3.2    Opinion of Plaintiffs' Counsel. Plaintiffs' Counsel have analyzed the benefits to be obtained under the terms of the proposed Settlement and have considered the costs, risks, and delays associated with the continued prosecution of the Action and likely appeals, as well as the merits of the defenses asserted by Defendants, the possibility that the Court may enforce Plaintiffs' agreements to arbitrate disputes on an individual basis, and the issues associated with satisfying Federal Rule of Civil Procedure 23 and thereby obtaining and sustaining class certification in this matter. Plaintiffs' Counsel believe that, in consideration of all of the circumstances and after good faith, prolonged, serious, and contentious arms-length negotiations in mediation with Defendants, the proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class. In making these statements and submitting a declaration filed concurrently herewith, Plaintiffs' Counsel are not making any admission of fact or law in regard to liability, fault allocation, or damages with respect to the Action.

3.3    Opinion of Settling Defendants. Settling Defendants have concluded that it is in their best interests that the Action be settled on the terms embodied in the

11

Settlement Agreement.   Settling Defendants reached that conclusion after: (1)

analyzing the factual and legal issues in the Action and considering the uncertainty

of litigation; (2) determining that further conduct of the Action through trial and any

possible appeals would be protracted and expensive; and (3) considering the benefits

of permitting Jeunesse to conduct its business unhampered by the distractions of

continued litigation.

**NOW, THEREFORE, IT IS HEREBY AGREED** by and between the

Settling Parties, through their respective counsel, that the Action and the Released

Claims be finally and fully settled, compromised and released, and the Action shall

be dismissed on the merits with prejudice, on the terms set forth herein.

## 4.    MONETARY RELIEF AND PRODUCT RETURN

4.1    <u>Monetary Fund</u>.  Jeunesse will establish a "Settlement Fund" in the

amount of Two Million Five Hundred Thousand Dollars ($2.5 million).  Of this

amount, Jeunesse will deposit Five Hundred Thousand Dollars into an escrow

account within ten (10) business days after the Court issues the Preliminary

Approval Order.  This initial amount may be utilized, in part, to pay all costs of

providing Notice to Settlement Class Members, establishing the Settlement website,

and paying all other costs incurred by the Claims Administrator.  In the event that

this initial payment proves insufficient to fund all such costs, the Claims

Administrator will advise Jeunesse, and Jeunesse will make additional payments as

required to fund these costs. Jeunesse will pay the balance, making its total payment $2.5 million, within ten (10) business days after the Final Judgment becomes Final. To the extent interest is earned on amounts held in escrow, it shall accrue and be available as part of the Available Settlement Funds. The Escrow Agent, on behalf of the Settlement Class, shall be responsible for all administrative, accounting, and tax compliance activities in connection with this escrow account.

4.2   <u>Product Return Benefit</u>. Jeunesse, pursuant to Appendix B.4 of its Global Policies and Procedures, allows Distributors who wish to resign from their distributorships to "return Currently Marketable Product for a refund if purchased within twelve (12) months prior to the request for a refund." Upon the Court's issuance of the Preliminary Approval Order, then regardless of whether or not the Court issues the Final Judgment or the Final Judgment becomes Final, Jeunesse shall waive, during the time period set forth in the Preliminary Approval Order and the Notice and Summary Notice for Settlement Class Members to file claims for benefits, the requirements in Appendix B.4 and B.4.1 of its Policies and Procedures precluding Distributors who wish to resign or who previously have resigned from returning products beyond twelve (12) months from purchase or the commercially reasonable shelf life period of which has passed. The per-Distributor limit for such untimely returns shall be Twenty-Five Hundred Dollars ($2,500). Any Distributors wishing to return a greater amount of products outside the normal return period and

13

conditions may contact Jeunesse and attempt to reach a mutually-agreeable solution, and may opt out of this Settlement Agreement if a mutually-agreeable solution is not forthcoming. All other terms of Appendix B.4 shall remain in full effect. Any Settlement Class Members who avail themselves of this benefit by returning products will be deemed to have resigned as Distributors, as Appendix B.4 provides.

4.3    Division of the Settlement Fund. After deducting all notice and administration costs, the payment of fees and costs to Plaintiffs' Counsel, and any incentive awards paid to Plaintiffs, the remainder, which shall be referred to herein as the "Available Settlement Funds," shall be divided into three pools, as follows. Sixty-five percent (65%) of the Available Settlement Funds can be claimed by claimants of Settlement Fund Benefit "A"—Refunds for Starter Kits, as explained below in Paragraph 4.6. Thirty-five percent (35%) of the Available Settlement Funds can be claimed by claimants of Settlement Fund Benefit "B"—Refunds for Discarded Products, as explained below in Paragraph 4.7.

4.4    Inter-Fund Transfers. If claims for either of these settlement benefits exceed the amount set aside to pay such benefit, but amounts remain in the other pool of Available Settlement Funds after full satisfaction of all valid claims for that benefit, then the Claims Administrator may transfer remaining funds into the pool available for the higher-claimed benefit. In other words, if the Settlement Administrator calculates that after all valid claims for Settlement Benefit "A" will

14

have been fully paid, funds will remain in that pool, while claims for Settlement Benefit "B" exceed the available funds such that reductions would have to be made *pro rata*, the Claims Administrator may transfer those remaining funds into the pool available to pay Settlement Benefit "B" in order to reduce or eliminate the need to reduce those claims *pro rata*.

4.5    *Pro Rata* Reductions.  If valid claims for a particular benefit exceed the amount of Available Settlement Funds set aside to pay claims for that benefit, even after any inter-fund transfer specified above in Paragraph 4.4, then the Claims Administrator will reduce *pro rata* the payment to each valid claimant for that benefit.  If, and only if, (i) at least $350,000 in Available Settlement Funds remain after *fully* paying all valid claims for all settlement benefits, and (ii) fewer than one-and-one-half (1.5) percent of Settlement Class Members file claims for settlement benefits, such remaining funds shall be returned to Jeunesse.  To the extent that less than $350,000 in Available Settlement Funds remain after fully paying all valid claims for all settlement benefits, or more than one-and-one-half percent of Settlement Class Members file claims for settlement benefits, any remaining Available Settlement Funds shall be paid as *cy pres* remedy to New Hope For Kids, a 501(c)(3) charity organized and operating under the laws of the State of Florida..

4.6    Settlement Fund Benefit "A"—Refunds for Starter Kits.  During the Settlement Class Period, Jeunesse has charged new Distributors varying amounts,

15

most often Forty Nine Dollars ($49.00), for a "Starter Kit" of marketing materials and other business support. If a Settlement Class Member affirms on a Claim Form that he or she (a) paid that fee with the intention of building a business selling Jeunesse products (as opposed to, for example, with the intention to purchase Jeunesse products at Distributor-discounted prices solely for self-consumption); (b) never advanced in rank in the Jeunesse genealogy of distributors; and (c) did not earn at least the amount he or she paid for the Starter Kit in commissions or product resales; then that Settlement Class Member may claim a refund for the price he or she paid for the Starter Kit. In addition to the affirmations described above, such a Settlement Class Member need only provide his or her name, address, Jeunesse account number, approximate date of the Starter Kit purchase and price paid for the Starter Kit. Jeunesse will provide this information to the claims administrator to be verified by the Claims Administrator, who will construe the information broadly in favor of approving claims of responding Class Members.

4.7    Settlement Fund Benefit "B"—Refunds for Discarded Products. Although Jeunesse always has allowed Distributors who wished to resign from their Distributorships to return unsold products within twelve (12) months of purchase for at least a ninety-percent (90%) refund, Plaintiffs contend, and Jeunesse disputes, that some Distributors may have discarded Jeunesse products rather than attempting to return them. A Settlement Class Member who attests on a Claim Form that he or

16

she discarded Jeunesse products that he or she intended to resell, but was unsuccessful in reselling, may claim a refund of fifty percent (50%) of the price paid for that discarded merchandise.  On the Claim Form, the Settlement Class Member shall identify, in addition to his or her name, address, and Jeunesse account number, (a) the name and/or SKU of the product(s) discarded, (b) the estimated date(s) of purchase of the product(s) subsequently discarded, (c) the date(s) on which the product(s) was or were discarded, and (d) the actual or approximate amount paid for each discarded product (the "Product Return Amount"). Jeunesse will provide this information to the claims administrator to be verified by the Claims Administrator, who will construe the information broadly in favor of approving claims of responding Class Members. If the Settlement Class Member claiming this benefit is unable to provide the actual or approximate price(s) he or she paid for the product(s) discarded, then the Claims Administrator shall calculate the claims amount to be 50% of the price Jeunesse charged Distributors for the product(s) on the purchase date(s).

4.8    <u>Multiple Benefits</u>. Settlement Class Members may pursue claims for both Settlement Benefits if they qualify for both.

4.9    <u>Deemed Resignations</u>.  Because only Settlement Class Members who assert that they attempted but failed to build a Jeunesse business are eligible to claim Settlement Fund Benefits "A" and "B," all Settlement Class Members who claim

17

those benefits and who have not previously resigned as Distributors or had their distributorships otherwise terminated will be deemed by Jeunesse to have resigned as Distributors as of the date of such claim.

4.10    <u>Provisions for Direct Deposit</u>.  The Claims Administrator will provide Settlement Class Members the option of receiving claimed benefits by check or by direct deposit into such Settlement Class Member's bank account if the Settlement Class Member elects to furnish the Claims Administrator with the necessary bank routing and account numbers.  The Settling Parties shall have no responsibility or liability in connection with the fulfillment of such requests.

4.11    <u>Uncashed Checks.</u>  For Settlement Class Members who elect to receive their benefits by check, the checks will state on their face that they must be cashed or deposited within ninety (90) days of the date printed on the check, after which the checks will become void.  The funds from any uncashed or undeliverable checks will be returned to the Claims Administrator for distribution as otherwise outlined in this agreement.

4.12    <u>Claim Forms</u>.  Claim Forms shall be available from the Claims Administrator, as set forth in the Notice to the Settlement Class.  The Settling Parties expect that the vast majority of claims will be completed online through a website to be set up by the Claims Administrator, but the Claims Administrator also will make hard-copy Claim Forms available to Settlement Class Members who request

18

them.  Completed Claims Forms shall be due to the Claims Administrator by the date set by the Court in the Preliminary Approval Order and described in the Notice and Summary Notice (the "Claims Deadline").

4.13  <u>Opt-Out Forms</u>. Class Members who wish to opt out of the settlement may submit an Opt-Out Form or letter to the Claims Administrator prior to the deadline set by the Court for such action and described as such in the Notice and Summary Notice.  Jeunesse reserves all rights to seek to enforce the arbitration agreement (if any) executed by a Distributor who opts out of the settlement.  If a Settlement Class Member submits both a Claims Form and an Opt-Out Form, the Claims Administrator shall disregard the Opt-Out Form.

4.14  <u>Anti-Fraud Measures</u>.  The claims process shall employ standard anti-fraud measures to be determined and implemented by the Claims Administrator, in addition to Jeunesse's ability to compare data provided by Settlement Class Members with its records and information otherwise available to it.  The ultimate decision will be made by the Claims Administrator to be construed liberally in favor of payment.

4.15  <u>No Disbursement of Direct Relief Before Effective Date</u>. The Escrow Agent and the Claims Administrator shall not disburse any portion of the Available Settlement Funds before the Final Judgment becomes Final and all calculations have been performed with respect to any necessary inter-fund transfers and *pro rata*

reductions.  The only portions of the Settlement Fund that may be expended prior to the Final Judgment becoming Final are those necessary to provide notice to Settlement Class Members and to administer the settlement.

4.16  <u>Privacy</u>. The Claims Administrator shall take reasonable measures to the extent permitted by law to assert and to protect the privacy rights of Settlement Class Members, including by maintaining the confidentiality and security of and preventing the unauthorized access or acquisition of any financial or personal information submitted in connection with any claim for benefits pursuant to this Settlement Agreement.  In the event of any unauthorized access to or acquisition of personal information concerning any Settlement Class Member as a direct result of the intentional or negligent acts or omissions of the Claims Administrator, the Claims Administrator shall be responsible for complying with any privacy, data security, or breach notification obligations under state or federal law, and will be solely responsible for directly providing notice to state agencies, affected Settlement Class Members, and/or other persons or entities.

4.17  <u>Taxes on Escrow Account</u>. The Settlement Fund shall constitute a qualified settlement fund within the meaning of Treasury Regulations Sections 1.468B-1 through 1.468B-5, 26 C.F.R. §§ 1.468B-1 through 1.468B-5 (1992). The Settling Parties shall treat the Settlement Fund as qualified settlement funds for all reporting purposes under the federal tax laws. For the purpose of Section 468B of

the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. Section 1.468B-2(k)). Such returns shall be consistent with this Subsection and in all events shall reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid out of the income earned by the Settlement Fund. Taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and paid without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from the income earned by the Settlement Fund any funds necessary to pay such taxes, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Section 1.468B-2(1)(2)). The Escrow Agent shall maintain accurate records of all expenditures made pursuant to this Subsection, and shall provide the records upon request to Plaintiffs' Counsel and Jeunesse's counsel. None of the Settling Parties, or any of their counsel, shall have any responsibility for the payment of taxes described in this Subsection. The parties hereto agree to cooperate with the Escrow Agent, each other, and their

tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Subsection.  The parties further agree that the costs of claims administration will be excluded from the qualified settlement fund for tax purposes.

4.18    <u>Discretion of Claims Administrator</u>. The Claims Administrator, who shall be jointly proposed by Jeunesse and Plaintiffs' Counsel and approved by the Court, shall have discretion to carry out the intent of the Settlement Agreement.

4.19    <u>Continuing Jurisdiction Over Direct Relief</u>. Disputes regarding this Agreement or disbursement of the Settlement Fund shall be within the jurisdiction of the Court, *custodia legis*, until such time as the Settlement Fund has been distributed pursuant to this Settlement Agreement.

## 5.    CORPORATE POLICIES

5.1    In addition to denying the allegations made in the Action, Jeunesse asserts that at all times, it has conducted its business in full compliance with all applicable United States federal and state laws governing its business.  The legal obligations of multi-level marketers in the United States have changed over time, and Jeunesse asserts that it has conformed its activities to new regulatory guidance within a reasonable time frame after such guidance has been issued.  To the extent Jeunesse has changed its corporate policies over time, or agrees herein to make additional changes, this does not constitute an admission by Jeunesse—and Jeunesse

does not believe—that its prior policies in effect violated or even arguably could be construed as having violated any applicable legal requirement.

5.2    After this lawsuit was initiated, Jeunesse implemented, instituted or continued to maintain, the corporate polices set forth in this Section 5.

5.3    In Jeunesse's "Financial Opportunity" document, where Jeunesse describes the financial benefits available to Distributors, Jeunesse will advise prospective distributors that additional financial incentives may be available to new distributors with significant experience in the multi-level marketing industry and/or existing downlines, and that such persons should contact Jeunesse for additional details about these available incentives.

5.4    Jeunesse will continue to differentiate between "wholesale customers" and those who join to partake in the income opportunity.  Jeunesse will characterize people as "wholesale customers" if they do not have distributor-like activity, such as earning sales commissions or sponsoring any new Distributors, in any 90-day period.

5.5    Jeunesse will continue to track retail sales electronically.

5.6    Jeunesse will continue not to require purchases of product packages to become a Distributor.

5.7    Jeunesse will continue not to allow distributors to earn commissions based on personal purchases.

23

5.8     The corporate policies identified above in Paragraphs 5.4-5.8 shall apply to all Distributors in the United States, take effect no later than 30 days after the Court enters the Preliminary Approval Order, and remain in effect at least through the earlier of two years after the Settlement becomes Final or December 31, 2021.

5.9     Nothing in this Section 5 shall be construed as precluding Jeunesse or any other party within the ambit of the arbitration agreement between Jeunesse and a Distributor from seeking to enforce the terms of that agreement in future disputes. Plaintiffs and Plaintiffs' Counsel acknowledge that Jeunesse has made changes to its standard arbitration agreement since the Action began and that the arguments Plaintiffs made against enforcement of the version of the arbitration agreement to which Plaintiffs themselves were subject could not be made against Jeunesse's arbitration agreement as currently drafted and disclosed to Distributors.

## 6.     ENTRY OF PRELIMINARY APPROVAL ORDER, NOTICE TO THE SETTLEMENT CLASS, AND ENTRY OF FINAL JUDGMENT

6.1     <u>Motion for Preliminary Approval</u>. Promptly upon execution of this Settlement, Plaintiffs shall submit this Settlement Agreement together with its exhibits to the Court and shall apply to the Court for entry of the Preliminary Approval Order, which includes provisions that, among other things, will:

6.1.1 Preliminarily approve the Settlement Agreement as being reasonable and the product of good faith negotiations;

6.1.2 Certify for settlement purposes only the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure;

6.1.3 Approve the Claim Form substantially in the form attached as Exhibit D, and approve Epiq as the Claims Administrator;

6.1.4 Approve the Opt-Out Form substantially in the form attached as Exhibit E;

6.1.5 Approve the Notice substantially in the form attached as Exhibit A and the Summary Notice substantially in the form attached as Exhibit B;

6.1.6 Order that the Summary Notice be disseminated in the manner set forth in the Notice Program attached as Exhibit F and in accordance with the Preliminary Approval Order;

6.1.7 Provide that any person falling within the definition of the Settlement Class who desires to be excluded from the Settlement Class must request exclusion by submitting a timely and valid exclusion request, in compliance with the instructions in the Notice of Proposed Settlement, to the Claims Administrator by the date specified in the Preliminary Approval Order, which shall fall not later than thirty (30) days before the Fairness Hearing;

25

6.1.8 Provide that persons falling within the definition of the Settlement Class who do not file valid and timely requests for exclusion will be: (i) bound by the Final Judgment dismissing the Action on the merits and with prejudice; and (ii) permanently barred from commencing, prosecuting or participating in the recovery in any direct or representative action, or any action in any other capacity, asserting any of the Released Claims, in the manner described in Section 8;

6.1.9 Provide that, pending final determination of whether the Settlement Agreement should be approved, neither the Plaintiffs nor any member of the Settlement Class, either directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting or purporting to assert any of the Released Claims against Defendants or any other of the Released Parties;

6.1.10 Find that the notice to be given in accordance with the Preliminary Approval Order (including the contents of the Notice and Summary Notice and the proposed means for effecting notice to persons falling within the definition of the Settlement Class) constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all members of the Settlement Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

26

6.1.11  Order that notice to persons falling within the definition of the Settlement Class shall be structured to be as efficient as possible and to make maximum use of notice by e-mail and other electronic means and that such notice shall be undertaken by the Claims Administrator;

6.1.12  Schedule a Fairness Hearing, no earlier than the date permitted under the Class Action Fairness Act, 28 U.S.C. § 1715(d), to consider and determine whether the Settlement proposed under the terms of this Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the Final Judgment approving the Settlement Agreement and resolving the Action should be entered, and to consider the request for an award of attorney's fees and reimbursement of expenses;

6.1.13  Provide that the Fairness Hearing on this Settlement Agreement and any request for an award of attorneys' fees and reimbursement of expenses may, from time-to time and without further notice to the Settlement Class other than Settlement Class Members who have timely submitted objections, be continued or adjourned by order of the Court;

6.1.14  Provide that objections by any Settlement Class Member to (i) the proposed Settlement, (ii) entry of Final Judgment, (iii) entry of an order approving the Settlement Agreement, or (iv) any proposed award of attorneys' fees

27

and reimbursement of expenses to Plaintiffs' Counsel shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Settlement Hearing only if, by the date set forth in the Preliminary Approval Order, which shall be no later than thirty (30) days before the Fairness Hearing, such objector files with the Claims Administrator a written notice of his, her, or its intention to appear and states the basis for the objections;

6.1.15 Provide that, on the Effective Date, all Settlement Class Members, whether or not they file a Claim Form or sign a release, shall be barred from asserting any Released Claims against any of the Released Parties, and each and all Settlement Class Members shall conclusively be deemed to have released and forever discharged any and all such Released Claims as against all of the Released Parties, in the manner described in Section 8.

6.2    <u>Class Action Fairness Act Notices</u>.  Within ten (10) days after Plaintiffs move the Court for preliminary approval of the settlement, Jeunesse shall provide or cause to be provided notices of the settlement to state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

6.3    <u>Cooperation</u>.  Jeunesse shall cooperate in providing to the Claims Administrator information such as names, addresses, and e-mail addresses, or such other information as the Claims Administrator requests, for the notice and settlement

administration process, which shall be provided to the Claims Administrator pursuant to a confidentiality agreement.

6.4    <u>Motion for Final Judgment</u>. If, after the Settlement Hearing scheduled by the Court in the Preliminary Approval Order, the Court approves the Settlement Agreement, then counsel for the Settling Parties shall request that the Court enter Final Judgment.

## 7.    NO ADMISSION OF FAULT, LIABILITY, OR WRONGDOING

7.1    <u>No Acknowledgement of Liability or Wrongdoing</u>. The Settling Defendants enter into this Settlement Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.  The Settling Defendants continue to deny all of the material allegations in the Complaint and the First Amended Complaint and to assert that Plaintiffs' claims are without merit.

7.2    <u>No Inference of Liability or Wrongdoing</u>.  Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with them, nor any other action taken to carry out this Settlement Agreement by any of the Settling Parties shall be construed as, or shall be used as, or shall raise any presumption or inference of, an admission or concession by or against or respecting the Settling Defendants of the truth of any of the allegations in the Complaint or First Amended Complaint, or of any liability, fault or wrongdoing.

29

7.3    <u>The Settlement is Not Evidence of Liability or Wrongdoing</u>.   This

Settlement Agreement, its terms or provisions, and the negotiations or proceedings

connected with them shall not be offered as evidence or received in evidence in any

pending or future civil, criminal, or administrative action or be used to create any

inference or presumption of liability or an admission of any kind by any Settling

Defendant, except as may be necessary to enforce the terms of this Settlement

Agreement.

## 8.    RELEASE

8.1    As of the Effective Date and in consideration of this Settlement

Agreement and the benefits extended to the Class, the Defendants and all of its and

their present and former, direct and indirect, subsidiaries, parents, affiliates,

incorporated or unincorporated entities, divisions, groups, officers, directors,

shareholders, partners, partnerships, joint ventures, employees, agents, servants,

assignees, successors, insurers, indemnitees, attorneys, transferees, and/or

representatives, and all Distributors, shall be released and forever discharged by the

Class Representatives, for themselves and as the representatives of each Settlement

Class Member; each Settlement Class Member on behalf of himself or herself; and

their respective present and former, direct and indirect, subsidiaries, parents,

affiliates, incorporated or unincorporated entities, divisions, groups, officers,

directors, shareholders, partners, partnerships, joint ventures, employees, agents,

30

servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives (collectively, the "Releasing Parties") from all claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date, that (1) were or could have been asserted in the complaints filed in this Action, or (2) are based upon, arise out of, or reasonably relate to, the claims asserted in the Action. This definition of "Released Claims" specifically extends to any allegation that, during the Class Period, Jeunesse or any Distributor engaged in any acts of unfair competition; false and/or misleading advertising; or operated any type of illegal, pyramid, endless chain, or fraudulent scheme. Released Claims do not, however, include (a) claims for personal injury or that a Jeunesse product was defective; or (b) federal, state, or local government statues, rules, regulations or ordinances over which a federal, state, or local government agency or similar authority retains sole jurisdiction and for which there is no private right of action accruing to the Settlement Class Members, either collectively, individually, or as a matter of such government agency's *parens patriae* authority.

8.2    The Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the Action that the Settlement Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to

this Settlement. With respect to the Released Claims only, the Settlement Class

Members stipulate and agree that, upon the Effective Date, the Settlement Class

Members shall be deemed to have, and by operation of the Final Judgment shall

have, expressly waived and relinquished, to the fullest extent permitted by law, the

provisions, rights and benefits of Section 1542 of the California Civil Code, or any

other similar provision under federal or state law, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
>
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
>
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
>
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED
>
> HIS OR HER SETTLEMENT WITH THE DEBTOR.

8.3    The Settlement Class Members may hereafter discover facts in addition

to or different from those they now know or believe to be true with respect to the

subject matter of the Released Claims, but upon the Effective Date, shall be deemed

to have, and by operation of the Final Judgment shall have, fully, finally, and forever

settled and released any and all of the Released Claims, whether known or unknown,

suspected or unsuspected, contingent or non-contingent, which now exist, or

heretofore have existed, upon any theory of law or equity now existing or coming

into existence in the future, for damages, injunctive relief, rescission, disgorgement,

or restitution or any other right, remedy, or relief of every nature and description

whatsoever, whether based on federal, state, local, statutory or common law or any

other law, rule, or regulation, including the law of any jurisdiction outside the United

States, that were brought or could have been brought in the complaints in this Action

without regard to the subsequent discovery or existence of such different or

additional facts.

8.4    Continuing Jurisdiction. Except for the enforcement of the Final

Judgment entered pursuant to this Settlement Agreement, the Releasing Parties shall

be barred from prosecuting any proceeding against any of the Released Parties with

respect to any Released Claim. The Court shall retain jurisdiction to enforce the

Final Judgment, releases, and bars to suits contemplated by this Settlement

Agreement. It is further agreed that the Settlement Agreement and the Final

Judgment may be pleaded as a complete defense to any proceeding subject to this

Section.

## 9.    EXCLUSION (OPTING-OUT) FROM THE SETTLEMENT CLASS

9.1    Any Person falling within the definition of the Settlement Class who

does not wish to participate in the settlement and be bound by the dismissals and

releases provided for in this Settlement Agreement must request exclusion from the

Settlement Class. A request for exclusion must state: (1) the name, address, and

telephone number of the Person requesting exclusion and (2) that the person wishes

to be excluded from the Settlement Class. The exclusion request must be sent by

mail or e-mail to the Claims Administrator and postmarked or e-mailed on or before

the date specified in the Preliminary Order.  The Claims Administrator shall deliver

copies of any and all requests for exclusion to Plaintiffs' Counsel and Jeunesse's

counsel.  The Claims Administrator shall make such deliveries on a weekly basis

and shall ensure that the final such delivery is received by Plaintiffs' Counsel and

Jeunesse's counsel at least thirty (30) days before the Fairness Hearing.  Plaintiffs'

Counsel shall file any and all such requests for exclusion with the Court at or before

the Fairness Hearing.  All Persons who submit valid and timely requests for

exclusion in the manner set forth in this Section shall have no rights under this

Settlement Agreement, shall not share in the distribution of the Settlement Fund, and

shall remain subject to efforts to enforce any agreements with Jeunesse. All Persons

falling within the definition of the Settlement Class who do not request exclusion in

the manner set forth in this Section shall be Settlement Class Members and shall be

bound by this Settlement Agreement and the Final Judgment. Any Person falling

within the definition of the Settlement Class who timely requests exclusion shall,

upon approval of the Court, be excluded from the class certified pursuant to Fed. R.

Civ. Proc. 23(b)(3), but each such Person shall remain in the class for purposes of

injunctive relief claims, certified pursuant to Fed. R. Civ. Proc. 23(b)(2).

## 10.    ATTORNEYS' FEES AND DISBURSEMENT OF EXPENSES

10.1    <u>Application for Attorneys' Fees and Expenses</u>. Plaintiffs' Counsel may

apply and anticipates applying to the Court at the Fairness Hearing for an award of

attorneys' fees and reimbursement of their expenses and costs from the Settlement

Fund in an amount to be determined by the Court as a percentage of the entire value

of settlement, including monetary and the value of the equitable relief, and, as a

common fund, in accordance with applicable law.  The Notice and Summary Notice

shall include the amount of fees and costs that Plaintiffs' Counsel expect to seek,

and Plaintiffs' Counsel will file a separate motion with the Court requesting an

award of attorney fees and costs at least two weeks *prior to* the deadline for

Settlement Class Members to object to the settlement.   Plaintiffs and Plaintiffs'

Counsel agree that they will not seek to collect any attorneys' fees, expenses, or costs

from any source other than the Settlement Fund. To the extent the Court may award

fees to counsel for any class member appearing before the Court in connection with

the approval or implementation of this Settlement Agreement, such fees also shall

be payable solely from the Settlement Fund.   Under no circumstances shall any

Settling Defendant other than Jeunesse have any monetary obligations to Settlement

Class Members, and the monetary obligations of Jeunesse under this Settlement

35

Agreement shall under no circumstances exceed its payment of the Settlement Fund and its enhanced acceptance of returns as set forth above in Paragraph 4.2.

10.2    <u>Payment of Attorneys' Fees and Expenses Award</u>. The attorneys' fees, expenses, and costs approved by the Court to be distributed to Plaintiffs' Counsel shall be paid by the Escrow Agent to Plaintiffs' Counsel from the Settlement Fund, within twenty (20) business days after the Effective Date.

10.3    <u>Named Plaintiffs' Compensation</u>. The Court may award reasonable incentive compensation to the named Plaintiffs for their service in the case, not to exceed One Thousand Dollars ($1,000) for James Aboltin, and Two Thousand Five Hundred Dollars ($2,500) for Pamela Knight, which shall come from the Settlement Fund.  Any such Court-ordered compensation shall be paid within twenty (20) business days after the Effective Date.  This shall be in addition to any benefits that the named Plaintiffs may claim as Settlement Class Members.

10.4    <u>No Effect On Settlement</u>. As set forth above in Paragraph 1.7.3, decisions by the Court with respect to Plaintiffs' Counsel's request for an award of attorneys' fees, costs, and expenses, or requests for incentive compensation to the named Plaintiffs, shall not operate to terminate or cancel this Settlement Agreement, and shall have no effect on the finality of the Final Judgment to be entered pursuant to this Settlement Agreement.

10.5    <u>Released Parties Not Responsible for Allocation of Award</u>. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' counsel, and any other Person who may assert some claim thereto, of any award of attorneys' fees, costs, or expenses that the Court may make.

## 11.    TERMINATION OF SETTLEMENT AGREEMENT

11.1    <u>Consequences of Termination</u>. If the Effective Date does not occur, then this Settlement Agreement shall have no further force or effect and the Settling Parties shall revert to their respective positions as of the date that the Settlement Agreement was executed by the Settling Parties, as though this Settlement Agreement had never been executed.  The terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties, and to the extent permitted by law, the Settlement Agreement and associated exhibits shall not be used in any action or proceeding for any purpose and any orders entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*.  In that event, within five (5) business days after written notification of such event is sent by Jeunesse's counsel or Plaintiffs' Counsel to the Escrow Agent, the Settlement Fund, less expenses and any costs which already have been disbursed, shall be refunded by the Escrow Agent to Jeunesse. In such

event, Jeunesse shall be entitled to any tax refund owing to the Settlement Fund. At the request of Jeunesse, the Escrow Agent or its designee shall apply for any such refund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for a refund, to Jeunesse.

11.2    <u>Retention of Order of Deadlines</u>. The Settling Parties acknowledge that, as of the date on which this Settlement Agreement was executed, Plaintiffs' obligation to move affirmatively for certification of a litigation class was due to fall prior to Jeunesse's obligation to respond to certain written discovery that Plaintiffs recently served upon Jeunesse. Nothing in this Paragraph shall be construed as precluding the parties from moving jointly for a stay of discovery and other deadlines until the Court decides the Defendants' pending motions to dismiss, to compel arbitration, or to deny class certification.

11.3    <u>Inadmissible for Purposes of Certifying a Litigation Class</u>. If the Settlement Agreement is terminated according to its terms or the Effective Date does not occur for any reason, the parties will not offer this Settlement Agreement, any agreement negotiated between the parties in connection with or regarding the Settlement or the Settlement Agreement, or any motion seeking approval of the Settlement or Settlement Agreement in connection with a motion to certify a litigation class or in any other proceeding in this Action.

## 12.    OTHER PROVISIONS OF THE SETTLEMENT

12.1    <u>Public Communications</u>. The Settling Parties agree that any communications regarding the settlement will be consistent with what the Settling Parties have advised the Court in public filings.  The Settling Parties and their counsel further agree not to disparage each other.

12.2    <u>Stay of Proceedings</u>. Upon the execution of this Settlement Agreement, the parties agree to seek a stay of all proceedings in the Action from the Court, except for proceedings that may be necessary to implement the Settlement or comply with or effectuate the terms of this Settlement Agreement.

12.3    <u>Best Efforts and Cooperation</u>. The Settling Parties acknowledge that it is their intent to consummate this Settlement Agreement. Accordingly, the Settling Parties agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement Agreement and exercise their best efforts to establish the foregoing terms and conditions of the Settlement Agreement. The Settling Parties further agree to cooperate in effecting notice to members of the Settlement Class and in securing the Court's approval of the Settlement.

12.4    <u>Entire Agreement</u>. This Settlement Agreement (along with the exhibits thereto) constitutes the entire agreement among the Settling Parties and supersedes any prior agreements or understandings between them. All terms of this Settlement Agreement are contractual and not mere recitals and shall be construed as if drafted

by all Settling Parties. The terms of this Settlement Agreement are and shall be binding upon and inure to the benefit of each of the Settling Parties and Settlement Class Members, their agents, attorneys, employees, heirs, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the parties hereto, including any Plaintiff or Settlement Class Member.

12.5    Amendment. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all parties hereto or their successors in interest. Amendments and modifications may be made without notice to the Settlement Class, unless notice is required by the Court.

12.6    Execution in Counterparts. This Settlement Agreement may be executed in counterparts or by facsimile, with each counterpart or facsimile signature having the same force and effect as an original. All executed counterparts and each of them shall be deemed to be the one and the same instrument. Counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

12.7    Jurisdiction. The Court shall have exclusive and continuing jurisdiction over the implementation, interpretation, and execution of the Final Judgment and this Settlement Agreement and all exhibits thereto, with respect to all parties hereto, including all Settlement Class Members.

40

Case 6:17-cv-01624-PGB-T_S    Document 258    Filed 08/17/18    Page 41 of 43 PageID
2042

12.8    <u>Governing Law</u>. The rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of Florida.

12.9    <u>Headings</u>. The headings and subheadings to this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

12.10 <u>Severability</u>. In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if the Settling Parties all elect in writing, to proceed as if such invalid, illegal, or unenforceable provision had never been included in the Agreement.

IN WITNESS WHEREOF, each of the Parties heretod has caused the Settlement Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

Dated: August 17, 2018

_____           _____
David N. Ferrucci, Esq.                    Jonathan Batchelor, Esq.
DICKINSON WRIGHT PLLC                       JONATHAN BATCHELOR PLC
1850 N. Central Ave., Suite 1400           200 W Portland St., #524
Phoenix, Arizona 85004                     Phoenix, Arizona 85003
(602) 889-5337                             602-358-6722

Counsel for Plaintiffs James Aboltin,
Pamela Knight, and the Settlement Class


_____           _____
James Aboltin                              Pamela Knight



_____
Jeffrey S. Jacobson, Esq.
KELLEY DRYE & WARREN LLP
101 Park Ave.
New York, New York 10178
(212) 808-5145

Counsel for Settling Defendants

42

Dated: August 17, 2018

_____

David N. Ferrucci, Esq.
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004
(602) 889-5337

_____

Jonathan Batchelor, Esq.
JONATHAN BATCHELOR PLC
200 W Portland St., #524
Phoenix, Arizona 85003
602-358-6722

Counsel for Plaintiffs James Aboltin,
Pamela Knight, and the Settlement Class

_____

James Aboltin

_____

Pamela Knight

_____

Jeffrey S. Jacobson, Esq.
KELLEY DRYE & WARREN LLP
101 Park Ave.
New York, New York 10178
(212) 808-5145

Counsel for Settling Defendants