FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

2018 DEC 10  PM 2: 58

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

|  |  |
|---|---|
| JAMES J. ABOLTIN, *et al.*, | |
| Plaintiffs, | Case No. 6:17-cv-01624-PGB-TBS |
| v. | |
| JEUNESSE, LLC, *et al.*, | |
| Defendants. | |

### BRIEF OF OBJECTOR HELEN XIONG IN OPPOSITION TO
### PROPOSED SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    A.    Background of Objector Helen Xiong's Dispute............................................2

    B.    Plaintiffs Have Attempted to Release Claims They Have No Standing To Release, Which Are The Most Valuable Claims That Can Be Asserted Against Jeunesse ......................................................................................3

    C.    The Settlement Is Unfair In Numerous Respects ...........................................4

ARGUMENT ............................................................................................................. 6

    A.    The Plaintiffs Lack Standing To Release Claims Under California Law......6

    B.    The Plaintiffs And Defendants Have Not Demonstrated that the Court has Jurisdiction To Release Class Members' California Claims .........................9

    C.    The Settlement Should Be Denied Because The Claims Process Is Misleading, Not Likely To Lead To Class Member Participation, and Discourages The Filing Of Legitimate Claims ...........................................10

    D.    The Settlement Is Not Fair, Reasonable, and Adequate ..............................13

        1.    There is Impermissible Adversity Between Subgroups of the Settlement Class.................................................................................................. 14

        2.    The Settlement Reflects Indicia That It Was Not Reached At Arm's Length .................................................................................................. 16

        3.    The Monetary Value of The Settlement Is Insufficient ................................. 17

    E.    The Settlement and Release Provisions Are Overbroad, One-Sided, and Unfair ........................................................................................................17

    F.    The Potentially Large Cy Pres Award To An Organization With No Nexus To The Claims At Issue Should Be Rejected ...............................................20

CONCLUSION........................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
    468 U.S. 737, 751 (1984)........................................................................5

*Amchem v. Windsor Prods. Inc.,* 5
    21 U.S. 591, 620 (1997)................................................................13, 14

*Bluetooth Headset,*
    654 F.3d at 948 ..............................................................................16

*Bristol-Myers Squibb Co. v. Superior Court of California,*
    137 S.Ct. 1773 (2017)........................................................................9

*Cf. Van Horn v. Trickey,*
    840 F.2d 604, 608 (8th Cir. 1988) .......................................................21

*Cmty. Bank,*
    418 F.3d 277, 307 (3rd Cir. 2005) .......................................................17

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332, 352 (2006)....................................................................6

*Davis v. FEC,*
    554 U.S. 724, 734 (2008)....................................................................6

*Dennis v. Kellogg Co.,*
    No. 11-55674, 2012 WL 3800230 (9th Cir. Sept. 4, 2012) ............................21

*Elizabeth M. v. Montenez,*
    458 F.3d 779, 784 (8th Cir. 2006) .........................................................7

*Eubank v. Pella Corp.,*
    __ F.3d __, 2014 WL 2444388, at *7 (7th Cir. June 2, 2014) .........................11

*Fitzhenrey-Russell v. Dr. Pepper Snapple Group, Inc.,*
    2017 WL 4224723, at *4 (N.D. Cal. Sep. 22, 2017) ......................................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.,*
    528 U.S. 167, 185 (2000)....................................................................6

*Gallego v. Northland Group, Inc.,*
    814 F.3d 123, 127 (2d Cir. 2016).........................................................10

*GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.,*

55 F.3d 768, 806 (3d Cir. 1995)...............................................................17

*Griffin v. Dugger,*
    823 F.2d 1476, 1483 (11th Cir. 1987) ..............................................7

*Hamilton v. SunTrust Mortg., Inc.,*
    2014 WL 5419507, *7 (S.D. Fla. 2014) ...........................................11

*Harris v. Vector Mktg. Corp.,*
    No. C-08-5198 EMC, 2011 WL 1627973, 2011 U.S. Dist. LEXIS 48878, at *48 (N.D. Cal. Apr. 29, 2011) ...........................................................................18

*Hawkins v. Comparet-Cassani,*
    251 F.3d 1230, 1238 (9th Cir. 2001) ................................................7

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935, 947 (9th Cir. 2011) ....................................................16

*In re Cal. Micro Devices Sec. Litig.,*
    168 F.R.D. 257, 262 (N.D. Cal. 1996)..............................................17

*In re Deepwater Horizon v. BP Exploration & Production, Inc., et al.,*
    732 F.3rd 326, 342 (5th Cir. 2013) ..................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768, 794 (3d Cir. 1995)........................................................13

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,*
    733 F. Supp. 2d 997, 1010 (E.D. Wis. Aug. 16, 2010)....................11

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    289 F.3d 98, 107 (D.C. Cir. 2002) ...................................................7

*In re Nat'l Football League Players Concussion Injury Litig.,*
    961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ......................................13

*In re Pet Food Prods.,*
    629 F.3d 333, 355 (3d Cir. 2010)......................................................16

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F. Supp. 2d 1365, 1367-68 (S.D. Fla. 2001) ............................7

*In reWarfarin Sodium Antitrust Litig.,*
    391 F.3d 516, 534 (3d Cir. 2004)......................................................13

*James v. City of Dallas,*
    254 F.3d 551, 563 (5th Cir. 2001) ....................................................7

*Kakani v. Oracle Corp.*,
   No. C 06- 06493 WHA, 2007 WL 179377, 2007 U.S. Dist. LEXIS 47515, at *31 (N.D.
   Cal. Jun. 19, 2007) ...................................................................................................................17

*Ala. Legis. Black Caucus v. Alabama*,
   135 S. Ct. 1257, 1276 (2015) ......................................................................................................6

*Lewis v. Casey*,
   518 U.S. 343, 358 n.6 (1996) ......................................................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 560 (1992) .............................................................................................................5

*Mahon v. Ticor Title Ins.*,
   683 F.3d 59, 65-66 (2d Cir. 2012) ..............................................................................................7

*Marek v. Lane*,
   134 S. Ct. 8, 9 (2013) .................................................................................................................21

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*,
   404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005).............................................................................8

*Molski v. Gleich*,
   318 F.3d 937, 945-51 (9th Cir. 2003) .......................................................................................20

*Moses Cone Memorial Hospital v. Mercury Construction Corp.*,
   460 U.S. 1 (1983).........................................................................................................................9

*Naschshin v. AOL, LLC*,
   663 F.3d 1034, 1038 (9th Cir. Nov. 21, 2011)..........................................................................21

*National Super Spuds*,
   660 F.2d at 18-19 .......................................................................................................................20

*National Super Spuds, Inc. v. New York Mercantile Exchange*,
   660 F.2d 9, 18  (2nd Cir. 1981)..................................................................................................19

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353, 367 (3d Cir. 2015)................................................................................................7

*NFL Concussion*,
   961 F. Supp. 2d at 714 ...............................................................................................................14

*Olden v. Gardner*,
   294 F. App'x 210, 219 (6th Cir. 2008) ......................................................................................17

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815, 856 (1999)................................................................................16

*Pearson v. NBTY, Inc.*,
  772 F.3d 778, 782–83 (7th Cir. 2014) ..........................................................10

*Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*,
  880 F. Supp. 292, 299-301 (M.D. Pa. 1995)..................................................20

*Prado-Steitman ex rel. Prado v. Bush*,
  221 F.3d 1266, 1279 (11th Cir. 2000) ............................................................7

*Rector v. City & Cty of Denver*,
  348 F.3d 935, 949 (10th Cir. 2003) ................................................................7

*Rosen v. Tenn. Comm'r of Fin. & Admin.*,
  288 F.3d 918, 928 (6th Cir. 2002) ..................................................................7

*Saccoccio v. JPMorgan Chase Bank, N.A.*,
  297 F.R.D. 683, 692 (S.D. Fla. 2014)............................................................14

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26, 40 n.20 (1976)............................................................................7

*Six Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301, 1307 (9th Cir. 1990) ............................................................21

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83, 101 (1998) ..................................................................................6

*Sullivan v. DB Investments*,
  667 F.3d 273, 329 n. 60 (3d Cir. 2011)..........................................................10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646, 654 (7th Cir. 2006) ................................................................18

*Vassalle v. Midland Funding LLC*,
  708 F.3d 747, 755 (6th Cir. 2013) ................................................................16

*Vought v. Bank of Am., N.A.*,
  901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ................................................18

*Walter v. Hughes Commc'ns, Inc.*,
  No. 09-2136, 2011 WL 2650711, at *14 (N.D. Cal. July 6, 2011)................12

*Warth v. Seldin*,
  422 U.S. at 502................................................................................................6

v

*Wilson v. Everbank, N.A.,*
    2016 WL 457011, at \*18 (S.D. Fla. Feb. 3, 2016)............................................................11

*Xiong v. Jeunesse Global, LLC,*
    Case No. 8:18-cv-01430-DOC (C.D. Cal.).........................................................................2

**Statutes**

C.C.P. § 1689.2...............................................................................................................................2

Cal. Code of Civil Procedure § 1689.2 ..........................................................................................8

Cal. Penal Code § 327..................................................................................................................2, 8

§ 1542 of the California Civil Code.............................................................................................5, 9

**Other Authorities**

James Richard Coben, Creating a 21st Century Oligarchy: Judicial Abdication to Class Action
Mediators, 5 PENN ST. Y.B. ARB. & MEDIATION 162, 163 (2013) .....................................17

Manual for Complex Litigation (Fourth) § 22.921 ................................................................13, 14

William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions § 2:1 (5th
ed. 2011) .......................................................................................................................................6

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................10

Fed. R. Civ. P. 23(e) ......................................................................................................................14

Fed. R. Civ. Proc. 23(b)(2) ...........................................................................................................20

Fed. R. Civ. Proc. 23(b)(3) ...........................................................................................................20

## INTRODUCTION

The settlement is a great deal for Jeunesse, its conspirators, and Class Counsel. It is a lousy deal for the consumers of this pyramid scheme, whose rights have been bargained away without independent representation. Class Counsel bear the burden of demonstrating that the Settlement agreement presents a certifiable class and appears to fall within the range of possible approval. The settlement is patently defective in the following material respects:

- The Plaintiffs lack standing to release California claims on an individual or classwide basis, even though an estimated 1/3 (or more) of all class member distributors have enrolled in California;

- The Plaintiffs have not established that this Court has jurisdiction to release claims of Californian residents even though none of the Plaintiffs can assert California causes of action individually or on a classwide basis;

- The claims process is misleading and discourages participation from victims of the pyramid scheme;

- The settlement provides inadequate monetary and injunctive relief;

- The class definition creates intraclass conflicts and does not limit recovery to actual victims;

- The release provision is overbroad, impermissibly one-sided, and requires a non-mutual release against 220,000 persons who are not even defendants in this action;

- Class Counsel conducted no discovery – thus, there is no factual record on which to evaluate the strength of the claims and defenses.

The settlement should be disapproved and the Motion denied.

1

# BACKGROUND

### A.  Background of Objector Helen Xiong's Dispute

Objector Helen Xiong became a Jeunesse distributor in 2015 and paid approximately $10,000 towards the opportunity. However, she has not received commissions as promised based on her participation in the scheme. On August 10, 2018, Xiong filed a class action complaint against Jeunesse and one of its top California Diamond distributors, Kimberly Hui, both of whom are defendants in this case. *Xiong v. Jeunesse Global, LLC*, Case No. 8:18-cv-01430-DOC (C.D. Cal.). A copy of the Complaint is attached hereto as **Exhibit 1**. Ms. Xiong has only asserted four causes of action under California law in her action, and she primarily seeks restitution and injunctive relief. Ms. Xiong does not seek to certify any of the claims at issue in this case. Ms. Xiong's case is presently stayed based on the pendency of this settlement Motion.

The first count in the Xiong Action, a claim under the California anti-pyramid scheme Endless Chain Law ("ECL"), codified at C.C.P. § 1689.2 and Cal. Penal Code § 327, broadly define that any operator or preparer of an "endless chain" must pay restitution to a "participant" less the amount paid out by the scheme to the participant. An "endless chain" is further defined as a business model where a "participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation." The California Legislature was clear that "compensation...does not mean or include payment based upon sales made to persons who are **not participants in the scheme and who are not purchasing in order to participate in the scheme**." Cal. Penal Code § 327 (emphasis added). In other words, the intent of the consumer to start her own business or personally consume product as a distributor, is irrelevant for the purposes of remedial liability.

2

**B.    Plaintiffs Have Attempted to Release Claims They Have No Standing To Release, Which Are The Most Valuable Claims That Consumers Can Assert Against Jeunesse**

Jeunesse has represented in the past that approximately 1/3 of its United States distributor base enrolled in the State of California, where anti-pyramid protection is particularly remedial and interposes criminal and civil liability.  None of the plaintiffs in this action are California residents, nor did Plaintiffs assert that they made purchases in California.  Jeunesse is not a California entity, nor is it licensed under the Seller Assisted Marketing Act (SAMP Act) of *California Civil Code Section 1812.200 et seq.* to do business in California.  Plaintiffs appear to be attempting to release Xiong's ECL claim and SAMP Act claim based on the potential risks of PLSRA preclusion as to Class Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO").  On January 2, 2018, Plaintiffs abandoned their only other viable Federal Count to address the pyramid scheme conduct, when they dismissed their Federal securities claim.[1]  Dkt. No. 184, p. 19.  The Class Plaintiffs have not provided sufficient information as to the size of the class, and have not undertaken a thorough review as to the exposure that they face on each claim.

On November 26, 2018, Ms. Xiong opted out of the monetary relief in the settlement (with her accompanying addendum), but by the very terms of her opt-out form, she did not opt out of the injunctive/restitution relief components of the settlement. *See* Opt Out Form Dkt. No. 259-1, p. 76 ("By checking this box, I affirm that I wish to be excluded from the **monetary** portion of the Class Action.") (emphasis added); *see also* Settlement, ¶9.1.  Ms. Xiong's completed Opt Out Form, subject to and with the accompanying addendum, is attached hereto

---

[1] Plaintiffs also pled claims under state law consumer fraud statutes of Texas, Florida, and Arizona. Dkt. No. 259-1, p. 8. But residents of these states are affected on a much smaller scale, and the consumer protection laws of these states are not as remedial as in California.

as **Exhibit 2**. Ms. Xiong reserves the right to request leave to intervene in this action. *Tech Training Assocs., Inc. et al. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017).

The settlement also contemplates an additional right of opt-out at a later date. Agreement, Dkt. No. 259-1, Settlement Agreement, ¶4.2 ("...and may opt out of this Settlement Agreement is a mutually-agreeable solution is not forthcoming").

### C.    The Settlement Is Unfair

On August 17, 2018, a Stipulation of Settlement was filed with the Court ("Settlement"). Dkt. No. 259-1. The Settlement was preliminarily approved to the unnoticed request for preliminary approval.   Monetary relief can only be obtained by filing a claim.  First, a Class Member is only permitted to receive restitution by way of a "refund for a starter kit" if payment was made with the "intention of building a business," the distributor "never advanced in rank," and the distributor "did not earn at least the amount he or she paid..."  Settlement, ¶4.6.

Second, a Class Member is only permitted to receive monetary relief by way of refunds for discarded products when he or she affirms "she discarded Jeunesse Products," and that she "intended to resell" but was unsuccessful. Settlement, ¶4.7.  A Class Member then only receives 50% of the amount of the product discarded, which is nothing more than a distributor may otherwise receive under the applicable documents by which Jeunesse is governed. This promise is thus, hollow.  Importantly, Jeunesse has discretion to "reach a mutually-agreeable solution" in response to any claim it receives.  Settlement, ¶4.2.  And the limitation that the distributor "did not earn at least the amount he or she paid" in the first form of monetary relief is noticeably absent from this form of relief.

Thus, there is legitimate concern that through this settlement, Jeunesse will seek to pay its cronies and middle men, rather than paying legitimate victims of the pyramid scheme.  By participating in this settlement, Jeunesse distributors will be deemed "to have resigned" and will

4

have been "otherwise terminated." Settlement, ¶4.9.  Since Jeunesse distributors must forfeit future commissions upon termination, distributors are required to forego and relinquish any financial benefit they may have accrued by participating in this settlement. Requiring a distributor to forfeit her distributorship for participating in this settlement undercuts the premise that this settlement has any value.

Jeunesse offers insufficient injunctive relief to the class for the broad and sweeping release demanded.  Settlement, ¶¶ 5.1-5.7.  The proposed injunctive relief does not warrant anything close to the Federal Trade Commission's 80/20 rule or 10-customer rule concerning market level marketing companies like Jeunesse, nor does the floor level of injunctive relief comply with California Law.

The release provisions are incredibly broad, and one-sided.  Each class member is required to release "all Distributors," "Jeunesse" and all parties it could possibly be affiliated with, but Jeunesse offers no reciprocal settlement. Settlement, ¶¶ 8.1.  It is rare to see a class settlement where *hundreds of thousands* of unknown persons are being released.  This provision should not be approved.  At minimum, Jeunesse must publish and provide to the Court a list of all persons that will have been deemed to have been given a release.

The Release also broadly includes a specific reference to the claims Ms. Xiong and her class have asserted, *i.e.* "unfair competition; false and/or misleading advertising; or operated any type of illegal, pyramid, endless chain, or fraudulent scheme." Settlement, ¶¶ 8.1. The Plaintiffs seek to waive the benefits of Section 1542 of the California Civil Code and release unknown claims, even though they are not California residents, and thus, have no right to do so.  *Id.* at ¶ 8.2.

### ARGUMENT

**A.     The Plaintiffs Lack Standing To Release Claims Under California Law**

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (*citing Allen v. Wright*, 468 U.S. 737, 751 (1984)). "Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). Standing is "an indispensable part of the plaintiff's case," and thus, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Ala. Legis. Black Caucus v. Alabama*, 135 S. Ct. 1257, 1276 (2015) (*quoting Lujan*, 504 U.S. at 561) (alteration in original).

The Plaintiffs attempt to obtain standing through bootstrapping the claims of absent class members, but the Supreme Court requires that a plaintiff demonstrate actual standing for each claim that is asserted. *Davis v. FEC*, 554 U.S. 724, 734 (2008) ("a plaintiff must demonstrate standing for each claim he seeks to press"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). Because "[s]tanding requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for each claim he seeks to press[,]'" courts "do not exercise jurisdiction over one claim simply because it arose from the same 'nucleus of operative fact' as another claim." *Neale*, 794 F.3d at 359 (*quoting DaimlerChrysler*, 547 U.S. at 352).

The same principle applies in class actions. "A plaintiff who would be unable to maintain an individual action under [the standing requirements of] *Lujan* cannot maintain a class action."

6

1 William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions § 2:1 (5th ed. 2011); *see also Warth v. Seldin*, 422 U.S. at 502 ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976) (class representative cannot acquire standing by claiming "that injury has been suffered by other, unidentified members of the class ... they purport to represent").

At least the Eleventh, Second, Third, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits are all in accord on this point. *Prado-Steitman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim"); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (Class cannot acquire standing "by virtue of [the representative] having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.")[2]

Objector Xiong has asserted *only* California claims ("California Claims") in her California Class Action, principally under the ECL and the California Unfair Competition Law ("UCL"), and she has asserted none of the Federal, Texas, and Arizona Counts at issue in these

---

[2] *See also James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) ("Both standing and class certification must be addressed on a claim-by-claim basis."); *Mahon v. Ticor Title Ins.*, 683 F.3d 59, 65-66 (2d Cir. 2012); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015); *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002); *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001); *Rector v. City & Cty of Denver*, 348 F.3d 935, 949 (10th Cir. 2003); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107 (D.C. Cir. 2002).

proceedings. Because the Plaintiffs do not reside in California and did not make any purchases in California, Plaintiffs have no standing to assert or release, any claim under California Law. *See e.g. In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1367-68 (S.D. Fla. 2001) (rejecting attempt to assert state law claims by non-resident); *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005) ("California's UCL does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California.").

Jeunesse will no doubt attempt to morph and conflate this objection from one of a "standing" grievance to a commonality and predominance defect, because Xiong similarly asserts the underlying facts that Jeunesse and its cronies are operating a pyramid scheme. However, as the above Supreme Court and Circuit authority above demonstrates, this shortcut and bootstrapping is not allowed.

Even if Ms. Xiong's objection were not treated as a standing issue, but rather a commonality and predominance issue, the settlement agreement could not be approved as presently structured. There are several factual and legal differences with the two cases. First, it is not readily apparent that Plaintiffs in this case can assert claims sounding in pyramid scheme allegations in this Circuit based on the defenses Jeunesse may assert under the Private Litigation Securities Regulation Act (PLSRA). Plaintiffs and the class abandoned the only other viable theory to seek redress based on pyramid scheme conduct, a Federal Securities class action.

The material factual difference between the two cases is that Ms. Xiong faces no such formidable attacks and certification hurdles against her claims under California Endless Chain Law, Cal. Code of Civil Procedure § 1689.2 and Cal. Penal Code § 327. Second, approximately 1/3 of all Jeunesse distributors are California residents. Thus, Plaintiffs' attempted release of California claims provides a significant financial benefit without much to gain in return because

8

none of the plaintiffs here can assert claims under California law. Finally, a claimant raising a claim under the ECL does not face the same hurdles to advancing her claim on the merits. The ECL merely requires an individual to assert they are a "participant" in an "endless chain," which is further defined as a business model where revenues are made from recruiting others. Proving pyramid conduct under RICO does not proscribe liability with this certitude, even though such cases have recently been met with some success. Simply, commonality and predominance cannot be met for this settlement class because there is a large subset of absent class members in California that fare much better in establishing pyramid conduct.

**B.      The Plaintiffs And Defendants Have Not Demonstrated that the Court has Jurisdiction To Release Class Members' California Claims**

Related but independent from the fatal standing defect, is the question of whether jurisdiction properly lies by which the Plaintiffs can release the California claims.  In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), the United States Supreme Court held that courts should not exercise jurisdiction over claims of out-of-state residents.  Some Federal Courts have held these concerns of federalism are equally present as to a Federal Court evaluating state substantive claims. *See e.g. Fitzhenrey-Russell v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4224723, at *4 (N.D. Cal. Sep. 22, 2017).

It is undisputed that the Plaintiffs are not residents of California and did not purchase product or enter into distributorships in California.  Thus, jurisdiction is lacking by which an order can be entered releasing the California claims of non-residents.  Moreover, it is wholly improper for Jeunesse to demand from the class plaintiffs that they waive Section 1542 of the California Civil Code, when none of the class representatives are plaintiffs. *See Stipulation of Settlement*, ¶ 8.2.

9

Defendants have taken the position that the Court has no jurisdiction over Plaintiffs' substantive claims because such claims, and the determination of arbitrability of the claims, belongs in arbitration. *Moses Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). Thus, even if Ms. Xiong's jurisdictional objection were to be construed as an objection based on personal jurisdiction (which can be waived), as opposed to an objection based on subject matter jurisdiction (which cannot be waived), it is clear based on the positions the Defendants have taken before this Court (and several others) that this Court would not have jurisdiction to allow any Court to hear Ms. Xiong's claims on the merits.  The rights of over 220,000 people cannot be bargained away because of the specter that this case may be referred to arbitration for determination as to whether the contract is illusory.  For this additional reason, the settlement should not be denied.

**C.     The Settlement Should Be Denied Because The Claims Process Is Misleading, Not Likely To Lead To Class Member Participation, and Discourages The Filing Of Legitimate Claims**

Many courts have held that the claims notice process must be reasonable and fair, or else the settlement cannot be approved. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014) (J. Posner) (concluding that the claims process of a consumer class action settlement appeared to have been designed "with an eye toward discouraging the filing of claims"). Notice must be "the best notice practicable under the circumstances," "concisely and clearly stat[ing] in plain, easily understood language," *inter alia*, "the nature of the action[,] the definition of the class certified[, and] the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B).

Objector Xiong joins Truth In Advertising, Inc.'s ("TINA") objection that this claims-made structure, as opposed to a direct-pay settlement, is self-serving to Jeunesse and is not a meaningful opportunity to the class. Dkt. No. 270-1. Claims made settlements are notorious for

evidencing low participation, and coupled with the impermissible reversionary provisions Jeunesse has required in this settlement, this claims process improperly discourages participation. *Gallego v. Northland Group, Inc.,* 814 F.3d 123, 127 (2d Cir. 2016) (affirming denial of a class settlement where participation was only 5% participation); *Sullivan v. DB Investments*, 667 F.3d 273, 329 n. 60 (3d Cir. 2011) (en banc) (even when the class is directly mailed, response rates "rarely exceed seven percent.").

The facts here do not present the circumstances that have led some district courts to accept claims made settlements. *See Wilson v. Everbank, N.A.,* 2016 WL 457011, at *18 (S.D. Fla. Feb. 3, 2016) *quoting In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 733 F. Supp. 2d 997, 1010 (E.D. Wis. Aug. 16, 2010) (claims made settlements can sometimes "strike a proper balance between, on the one hand, avoiding fraudulent claims and keeping administrative costs low, and on the other hand, allowing as many class members as possible to claim benefits.")

This settlement fails this standard because it does not involve a low-price consumer product sold to millions of persons at an impermissible price premium, but rather involves litigation to seek restitution based on all consideration wrongfully obtained by a pyramid scheme. Also, the "claims made" process here, does not strike the balance because this settlement encourages participation from cronies of Jeunesse and discourages participation of victims, based on standards having nothing to do with anti-pyramid conduct, *i.e.* the covenant that the individual does not intend to consume *any* of the products.

Class members must navigate a vague and unnecessary administrative process that appears designed to decrease the cost to Jeunesse and encourage participation by conspirators. Like the class settlement recently rejected in *Eubank v. Pella Corp.,* __ F.3d __, 2014 WL 2444388, at *7 (7th Cir. June 2, 2014), the Settlement "strews obstacles in the path of any" class

11

member seeking recovery by imposing requirements and deadlines that, if unsatisfied, reduce or completely bar recovery. Claims made settlements only work if there is an "opportunity" to legitimate class members. *Hamilton v. SunTrust Mortg., Inc.*, 2014 WL 5419507, *7 (S.D. Fla. 2014). There is no such opportunity here.

On page three of the Claim Form, Jeunesse demands that as a condition for any class member to participate in the class resolution process, the class member must forfeit their distributorship, immediately resign, and forgo any other contractual benefits Jeunesse may otherwise owe a class member. Specifically, "[t]he benefits provided under this Settlement are for people who attempted, but ultimately failed, to build a Jeunesse distributorship business. As a result if you make a claim for one or more of the benefits below and you have not yet redesigned as a distributor, or your distributorship remains active, Jeunesse will deem you to have resigned as a distributor upon your making a claim for benefits under this settlement, and your Jeunesse distributor account will be closed." Claim Form, p. 3. These covenants impose a chilling effect on participation in this case. Fundamentally, this absurd claim provision completely undercuts the premise that injunctive relief has *any* value to absent class members. A "participating class member" cannot gain any benefit from prospective future injunctive relief if they are terminated and fired by virtue of their participation in the settlement. This demanded covenant is irreconcilable with the stated value of the settlement.

On page three of the same form, a condition to submitting a claim is that a class member has the "intention of building a business." *See also* Claim Form, p. 4. Aside from the fact this required covenant is vague and ambiguous to an average consumer who may construe "business" more substantively than what is intended, the "intent to build a business" is not an element of an anti-pyramid scheme claim under California Law or the law in many other jurisdictions or Section 5 of the FTC Act. Revenues derived from distributors that are recruited make this a

12

pyramid scheme, irrespective of a distributor's intent. Only if the products are purchased by a legitimate retail customer is the revenue legitimate retail revenue. Thus, Jeunesse's demand for a "true/false" covenant is likewise meant to chill participation in this settlement and is not reasonably connected to the claims that are being settled. These hurdles render participation onerous. *Walter v. Hughes Commc'ns, Inc.*, No. 09-2136, 2011 WL 2650711, at *14 (N.D. Cal. July 6, 2011) (rejecting class settlement where "[m]any hurdles stand between a class member and the receipt of . . . payment" and claim form was "unnecessarily complex," "confusingly arranged," and "invites user error"). The deficient claims process here requires denial of preliminary approval.

### D.    The Settlement Is Not Fair, Reasonable, and Adequate

To obtain approval of a proposed class settlement, Class Counsel must first demonstrate the existence of a certifiable class. *Amchem v. Windsor Prods. Inc.*, 521 U.S. 591, 620 (1997); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), *cert. denied* 516 U.S. 824 (1995) (denying approval of settlement where class not certifiable). Second, Class Counsel must proffer a settlement that "discloses [no] grounds to doubt its fairness . . . and appears to fall within the range of possible approval." *In re Nat'l Football League Players Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014).

When discovery is advanced and the parties' have developed a detailed factual record through adversary proceedings, the court may already have enough information to conduct that rigorous analysis. But where, as here, discovery has not yet commenced, the Court will have to proactively solicit that record and should carefully scrutinize a factual record developed outside of the adversary process. *See* Manual for Complex Litigation (Fourth) § 22.921. Similarly, where settlement negotiations precede class certification, the Court should be "even more

13

scrupulous than usual." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). This added scrutiny does not just apply to the fairness of the settlement; it applies to the Court's assessment of the Rule 23 requirements as well. *Amchem v. Windsor Prods. Inc.*, 521 U.S. 591, 620 (1997) ("a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold"); *see also In re Deepwater Horizon v. BP Exploration & Production, Inc., et al.*, 732 F.3rd 326, 342 (5th Cir. 2013) (Article III bars court from approving class settlement of claims of class members who lack standing); Fed. R. Civ. P. 23(e) (class settlement may be approved only if "it is fair, reasonable, and adequate").

In assessing whether a settlement "discloses grounds to doubt its fairness," the Court must consider whether: (1) the negotiations occurred at arm's length, (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar litigation, and (4) the class substantially favors the settlement. *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014); *NFL Concussion*, 961 F. Supp. 2d at 714.

### 1. There is Impermissible Adversity Between Subgroups of the Settlement Class

The settlement appears to further an improper funnel of settlement monies to conspirators and cronies of Jeunesse, instead of the to the rightful victims. Because of this conflict between victims of Jeunesse, and those that contribute to their demise, Class Counsel has not put forth a certifiable class. "The judge should examine the interests of all groups, including any future claimants, and make affirmative findings that each group is adequately represented by claimants and counsel who have no conflicting interests." *See* Manual for Complex Litigation (Fourth) § 22.921 (2004). Thus, "adversity among subgroups" – an intra-class conflict – precludes certification. *Amchem v. Windsor Prods. Inc.*, 521 U.S. 591, 627 (1997) (quotation marks omitted).

14

This settlement provides no deterrence against awarding conspirators of Jeunesse who may not have lost money. That is because losing money is not a condition to making a claim under the second form of relief, that form of relief which will ultimately result in a higher amount of claims. Companies like Jeunesse are set up to reward those at the top of the pyramid, and middle men that assist the upper levels of preying on new recruits. Jeunesse appears to retain unfettered discretion to determine claim eligibility and make distributions under the settlement. Up lines (those above the consumer victims) could encourage their downline friends and family in a collusive manner, to fill out forms with no maximums at issue, and thus, make the settlement appear beneficial, and participation better than expected as another backdoor means of compensating the undeserving and not the victims of the pyramid scheme.[3]

This objection is particularly important because the Plaintiffs highlighted the back-office deals that are so prevalent at Jeunesse in their Complaint. The form they have bought into, defeats the grievances written about, and instead encourages back-office deals because the Claims Administrator will be doling out settlement funds as a means by which Jeunesse can compensate their cronies, rather than payment to legitimate class members who are victims.

To further this point, payment under this settlement defeats principles of victim restitution as understood in common law and under the Endless Chain Law, requiring victims to be paid only the amounts they paid less, the amounts they received. In other words, a true victim of Jeunesse is one who paid more than they received back in commissions. Without such limitation as to the *second form of monetary relief*, this form encourages participation by the middle men of Jeunesse.

---

[3] Some Courts have appointed liaison counsel to coordinate and convey non-settling plaintiffs' positions to Proposed Class Counsel and the Court in an orderly manner. *Hyundai and Kia Fuel Economy Litigation*, MDL No. 2424, has adopted just, ECF No. 32 (C.D. Cal.). Admittedly, this is not MDL, but the oversight concerns with this settlement are heightened.

15

There is a second intra-class conflict. The settlement seeks to pay only those persons who "intended to grow a business," but that is not by definition how a pyramid scheme is defined under state law or Federal law. The intent of the distributor is not an element under the California Endless Chain Law, and income made by distributors is not considered to be legitimate retail income. Thus, the settlement and claim form improperly limit recovery to those who affirmatively state their intent is to a grow a business.

A "disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other hand, [makes] the settlement unfair." *Vassalle v. Midland Funding LLC,* 708 F.3d 747, 755 (6th Cir. 2013) (reversing district court's approval of a settlement). A court should reject a settlement where such an intra-class conflict is present on the grounds that it does not represent the "best possible recovery" for all putative class members. *In re Pet Food Prods.,* 629 F.3d 333, 355 (3d Cir. 2010); *see also Amchem,* 521 U.S. at 627 (denying class certification where settlement not agreed to by representatives of all sub-classes); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999) (holding that intraclass conflict "require[d] division into homogenous subclasses . . . with separate representation to eliminate conflicting interests"). As the Supreme Court and Circuit Court authority requires, there is an impermissible disparity based on Jeunesse's contrived requirement (having no mooring in anti-pyramid scheme law) that ones intent not include the intent to consume.

2. The Settlement Reflects Indicia That It Was Not Reached At Arm's Length

"[A]chiev[ing] the settlement after little or no discovery . . . raise[s] a red flag." *GMC Pick-Up Trucks Fuel-Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir. 1995). There is no dispute there has been little to no discovery. Nor does the presence of a mediator insulate the agreement, which discharge class counsel's duties. *Kakani v. Oracle Corp.,* No. C 06- 06493 WHA, 2007 WL 179377, 2007 U.S. Dist. LEXIS 47515, at *31 (N.D. Cal. Jun. 19, 2007); James Richard

16

Coben, Creating a 21st Century Oligarchy: Judicial Abdication to Class Action Mediators, 5 PENN ST. Y.B. ARB. & MEDIATION 162, 163 (2013) (deference to mediators "is an abdication of judicial fiduciary duty to ensure that proposed class action settlements are fair to absent class members."). Courts have also considered the claims participation rate as a ratio to the amount of attorney's fees and timing of this determination as indicative of whether a settlement should be approved. *Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be that is fictitious"); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, 2011 U.S. Dist. LEXIS 48878, at *48 (N.D. Cal. Apr. 29, 2011) (a court "cannot judge the settlement value until claims are filed."). Because the claims' participation is not yet known, the settlement is not at arm's length and cannot be approved.

### 3.   The Monetary Value of The Settlement Is Insufficient

While the Motion for approval does include some analysis of the substantive claims, the Motion, does not quantify the potential damages in the case. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (reversing approval where "the court did not attempt to quantify the value of plaintiffs' case or even the overall value of the settlement offer to class members"). Class Plaintiffs have repeatedly touted the significant value of the claims prior to the settlement at hundreds of millions of dollars, but are settling at a speck of these total through a claims made settlement that will not lead to meaningful consumer restitution.

### E.   The Settlement and Release Provisions Are Overbroad, One-Sided, and Unfair

The release provisions in this agreement are so overbroad that the Court could, on this basis alone, reject the agreement. Under the collective reach of the release provision, class members waive – *in perpetuity* – any past, present, or future claims against Jeunesse arising

17

under federal, state, or local law.   Such an expansive release of Jeunesse class members' claims is legally defective for several reasons.

First, release provisions in class settlement agreements that prospectively waive claims are highly disfavored since, contrary to public policy, a settling defendant otherwise would then be able to "purchase" a license to continue with its illegal conduct in the future. In their prior complaints in this action, the named plaintiffs assert only allegations under RICO and the states where putative class members are not substantively involved.  Given the limited scope of this Complaint, well-established federal caselaw precludes the settling parties from compromising the claims of absent class members that arise out of other legal or factual predicates. *See, e.g.*, *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 (2nd Cir. 1981) ("If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action should not be able to do so either.").

Second, the overly expansive scope of the Class Settlement Agreement's release provision could also compromise the ability of the FTC, SEC, the California Attorney General, FBI, and the Department of Justice to cooperate with class members.  While Federal and State Regulatory claims are not waived through the release provision, joint participation and sharing would be chilled by virtue of this agreement.

Third, the broad linguistic sweep of the release provisions suggests that, were the agreement endorsed by the Court, absent class members may be viewed as having waived their rights to seek *all* available forms of relief under state or local law, including substantial monetary relief.   However, when a proposed class settlement purports to waive rights to substantial monetary relief (by virtue of compromising claims under state or local laws for which statutory, compensatory, and/or punitive damages may be available), constitutional considerations dictate

18

that absent class members receive both personal notice and an opportunity to opt out of the proposed settlement agreement irrespective of whether the class action has been nominally certified under Fed. R. Civ. Proc. 23(b)(2) or Fed. R. Civ. Proc. 23(b)(3). *Molski v. Gleich*, 318 F.3d 937, 945-51 (9th Cir. 2003).

Finally, the release provides for an abhorrent one way release of ***all distributors*** against all other distributors. In effect, Jeunesse is requiring an injunction and release that each class member release claims against ***230,000 people***. Requiring class members to release each other and claims against other conspirators creates a conflict and is overbroad.

Taken together, the procedural deficiencies underlying the agreement's broad release provisions, counsel against judicial endorsement of this agreement. *See, e.g.*, *National Super Spuds*, 660 F.2d at 18-19 (reversing district court's approval of class settlement agreement with over broad release provision that provided for uncompensated release of unliquidated potato futures contracts that were not encompassed within the class complaint concerning liquidated contracts); *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 299-301 (M.D. Pa. 1995) (rejecting class settlement requiring release of all class members' claims when only one-half of class received any direct economic benefit from agreement).

Lastly, the settlement is procedurally flawed because it lacks any mechanisms for enforcement or compliance monitoring. Absent such provisions, the only remedy for compliance and enforcement issues would be an action in federal court alleging breach of the settlement agreement – an expensive and time-consuming enforcement mechanism. While the absence of compliance monitoring or enforcement provisions may not alone be a reason to reject the Jeunesse agreement, the lack of such provisions – when coupled with the agreement's other significant procedural problems – underscores the manifest injustice class members will likely suffer if the district court endorses the agreement. *Cf. Van Horn v. Trickey*, 840 F.2d 604, 608

19

(8th Cir. 1988) (affirming district court's approval of prisoners' class action challenging conditions at correctional center when settlement agreement provided, *inter alia*, strong compliance monitoring program by court-appointed committee of penal experts).

**F.      The Potentially Large Cy Pres Award To An Organization With No Nexus To The Claims At Issue Should Be Rejected**

Cy pres settlements raise "fundamental concerns." *Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts, C.J.).  The cy pres award must be sufficiently related to the plaintiff class. *Dennis v. Kellogg Co.*, No. 11-55674, 2012 WL 3800230 (9th Cir. Sept. 4, 2012); *Naschshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. Nov. 21, 2011) (cy pres should not be "local" and must be a "nexus" between class and *cy pres* recipient); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (*cy pres* distribution must be guided by the objectives of the underlying statute and the interest of silent class members).  While Ms. Xiong has no reason to doubt the overall philanthropic mission and efforts of the chosen cy pres recipient (even though it may have past connections to Jeunesse or its members which have not been disclosed), this proposed cy pres recipient has no connection to the class, appears to be of local interest and not of national support where all class members may be found, and is not guided by the objectives of the underlying statutes at issue in this litigation.  The settlement should be rejected for this independent reason.

## CONCLUSION

Taken together, the Jeunesse Class Settlement Agreement's significant procedural and substantive flaws strongly counsel against judicial approval of the settlement.  While voluntary settlement of litigation is always a laudable goal, neither the parties nor this Court can sacrifice the claims of absent class members in order to avoid litigation. Ms. Xiong, therefore, objects to the Jeunesse Class Settlement Agreement and urges the Court to disapprove this agreement.

Dated:  December 7, 2018                    Respectfully submitted,


                                           /s/ Blake J. Lindemann
                                           Blake J. Lindemann
                                           (*pro hac vice pending*)
                                           California Bar No. 255747
                                           E-mail:  blake@lawbl.com
                                           **LINDEMANN LAW FIRM, APC**
                                           433 N. Camden Drive, 4th Floor
                                           Beverly Hills, CA 90210
                                           Telephone No: 310-279-5269
                                           Facsimile No: 310-300-0267


                                           *Counsel For Objector*
                                           *Helen Xiong*

21